IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. BLOCKQUOTE, INC., <br><br> Plaintiff-Relator, <br><br> v. <br><br> HELENA LABORATORIES CORPORATION and LABCON, NORTH AMERICA <br><br> Defendants. | Case No. 4:24cv596 ALM <br> **FILED UNDER SEAL** |

# COMPLAINT

1. Relator Blockquote, Inc. ("Relator") brings this action on behalf of itself and the United States of America against defendants Helena Laboratories Corporation and Labcon, North America for violations of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq*.

2. This action seeks to recover funds that were loaned to Defendants through the federal Government's Paycheck Protection Program ("PPP") and forgiven by the Government as a result of false applications.

3. Labcon, North America is a subsidiary of Helena Laboratories Corp., which is a clinical laboratory instrument and reagent manufacturer with subsidiaries located throughout the world.

4. Collectively, Labcon and Helena Laboratories Corp. applied for PPP

loans and received forgiveness totaling over $7 million. Had they properly applied the SBA's Affiliation Rules for PPP loans—the purpose of which is to prevent exactly this sort of "unbundling" of companies to circumvent PPP requirements—Defendants would not have been eligible for some of this funding.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331, 1345.

6. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 31 U.S.C. § 3732(a), as one or more defendant resides or transacts business in this jurisdiction and violations of the False Claims Act described herein occurred in this district.

## PARTIES

7. Defendant Helena Laboratories Corporation ("Helena Labs") is a clinical laboratory instrument and reagent manufacturer. Its principal address is 1530 Lindbergh Drive, Beaumont, TX 77707.

8. Helena Labs was founded by husband and wife Tipton and Helen Ann ("Ann") Golias and remains owned by the Golias family.

9. At all relevant times, Tipton Golias was CEO, Chairman of the Board, and a Director, and Ann Golias was a Director. Joseph Golias—Tipton and Ann's son—is currently a Director, but upon information and belief, he was

not a Director when the company obtained PPP loans.

10. Defendant Labcon, North America ("Labcon") manufactures disposable plastics including POC dispensers, urine cups, centrifuge tubes, and pipette tips. It has a principal office location at 3700 Lakeville Hwy, Suite 200, Petaluma, CA 94954.

11. Labcon is a wholly owned subsidiary of Helena Labs.

12. At all relevant times, Tipton Golias was CEO, Chairman of the Board, and a Director, and Ann Golias was a Director. Joseph Golias is also currently a Director, but upon information and belief, he was not a Director when the company obtained PPP loans.

13. MCI, Inc. is also a wholly owned subsidiary of Helena Labs. It has a principal address of 1530 Lindbergh Drive, Beaumont, TX 77707. Tipton and Ann Golias are its Directors.

14. Helena Labs has additional wholly owned subsidiaries in Australia, the U.K., and Japan. For example, it wholly owns Helena Laboratories (U.K.) Ltd. ("Helena Labs UK"), which at relevant times held 100% of voting rights and shares of Creacon Technologies B.V.; Prince Technologies B.V.; Immunogen International Ltd.; Helena Haemostasis Systems Ltd.; Manchester Comparative Reagents Ltd.; IGI Management Services Ltd.; Helena Services Ltd.; Helena Biosciences Ltd.; Helena Properties Ltd.; Helena Biosciences Europe Ltd.; and UK Biosciences Ltd.

15. According to Helena Labs UK's Financial Statements for the Year Ended June 30, 2020, the "company's immediate parent is Helena Laboratories Inc." and the "ultimate controlling party is T[ipton] Golias."

16. Helena Labs UK reported revenues of £13,215,038 for FY 2019 and a profit after tax of £505,278 for FY 2019.

17. Relator Blockquote, Inc. is a company based in California that produces public interest research, news reporting and investigations.

## THE PAYCHECK PROTECTION PROGRAM

18. During the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Section 1102 of the CARES Act contains a program called the Paycheck Protection Program ("PPP"), a program administered by the U.S. Small Business Administration ("SBA") to provide economic relief to small businesses nationwide adversely impacted by the coronavirus pandemic.

19. Section 1102 of the CARES Act temporarily permitted SBA to guarantee 100% of the PPP loans. Section 1106 of the CARES Act provided for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

20. The CARES Act gives lenders delegated authority to process loan applications for PPP funding. SBA allowed lenders to rely on certifications of the borrowers in order to determine eligibility of the borrower and use of loan

proceeds, and to rely on specified documents provided by the borrower to determine qualifying loan amount, and eligibility for loan forgiveness.

21. Under the First Draw program, lenders were compensated by the federal government via processing fees based on the balance of the financing outstanding at the time of final disbursement, in the following amounts:

- Five (5) percent for loans of not more than $350,000;
- Three (3) percent for loans of more than $350,000 and less than $2,000,000; and
- One (1) percent for loans of at least $2,000,000.

22. Borrowers had to submit documentation necessary to establish eligibility such as payroll processor records, payroll tax filings, form 1099s, income and expenses documentation.

23. In general, the maximum amount borrowers could borrow was calculated by aggregating payroll costs from the previous year, with annual employee salaries capped at $100,000. The borrower then calculated the average monthly payroll cost and multiplied that amount by a factor of 2.5.

24. The Economic Aid Act (P.L. 116-260, in the Consolidated Appropriations Act of 2021), authorized and funded a Second Draw PPP Loan program.

25. For Second Draw PPP Loans, lenders were compensated by the federal government via processing fees based on the balance of the financing

outstanding at the time of final disbursement, in the amount of five (5) percent for loans of more than $50,000 and not more than $350,000, and in the amount of three (3) percent for loans above $350,000.

26. Each borrower certified on the First and Second Draw loan applications that they were eligible to receive the loans under the program guidelines and that their applications and supporting documentation were accurate.

27. Borrowers were later able to seek forgiveness of the loans if the funds were used for eligible payroll costs, payments on business mortgage interest payments, rent, or utilities during either the 8- or 24-week period after disbursement.

## FACTUAL ALLEGATIONS

28. Helena Laboratories Corporation was approved for a First Draw PPP loan of $2,871,430 on April 27, 2020 by First Source Federal Credit Union. It reported 360 jobs. It falsely listed NAICS code 621491 (HMO Medical Centers) on its PPP loan application. The entire loan amount, plus interest, was forgiven for a total of $2,937,951.

29. Labcon, North America was approved for a First Draw PPP loan of $2,521,748 on April 30, 2020 by Celtic Bank Corporation. It reported 198 jobs. It listed NAICS code 326199 (All Other Plastics Product Manufacturing) on its PPP loan application. The entire loan amount, plus interest was forgiven for a total of $2,561,060.

30. Defendants collectively reported 558 jobs and received $5,499,011 in First Draw loan forgiveness.

31. Labcon, North America was approved for a Second Draw PPP loan of $2,000,000 on Jan. 27, 2021 by Celtic Bank Corporation. It reported 205 jobs. It listed NAICS code 326199 (All Other Plastics Product Manufacturing) on its PPP loan application. The entire loan amount, plus interest was forgiven for a total of $2,008,767.

32. Labcon was not eligible for its Second Draw loan under the PPP affiliation rules. Its employee count should have included affiliates such as Helena Labs and its foreign affiliates since they all shared common ownership and management.

## INELIGIBILITY UNDER AFFILIATION RULES

**A.   The Affiliation Rules**

33. A business was eligible for a First Draw PPP Loan if the business had 500 or fewer employees, the business met the SBA employee-based or revenue-based size standard for the industry in which it operates (if applicable), or the business was eligible under the SBA's alternative size standard, which requires that the companies' maximum tangible net worth is not more than $15 million; and average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million.

34. A business was eligible for a Second Draw PPP Loan if the business had 300 or fewer employees.

35. When multiple entities are operated under common ownership or management, the SBA generally applies "affiliation rules" that require the various entities to consolidate their employee and revenue count when evaluating their loan eligibility. Their purpose is to capture exactly the situation we appear to have with Helena Labs, where a single entity owns and/or controls multiple companies.

36. Defendants were affiliated with one another, MCI, and, for the Second Draw, the foreign subsidiaries under the SBA's Affiliation Rules for PPP Loans, under the management test, the ownership test, and if necessary, the identity of interest test.

*Ownership*

37. The "affiliation based on ownership" test states that:

> For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern.

38. At all relevant times, Helena Labs was the ultimate parent company for its many subsidiaries. It was the direct parent of at least Labcon, MCI,

and Helena Labs UK, which in turn wholly owned numerous subsidiaries.

*Management*

39. The "affiliation based on management" test states that:

> Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement.

40. At all relevant times, Tipton Golias was the "ultimate controlling party" for Helena Labs and its domestic and foreign subsidiaries. He was CEO and Chairman of the Board for Helena Labs and Labcon, as well as their Director along with his wife.

*Identity of Interest*

41. A third affiliation test, the "identity of interest" test, applies where there is an identity of interest between close relatives—including spouses, parents, and children—"with identical or substantially, identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area)."

42. Insofar as it is argued that Ann and/or Joseph were the owners or operators of these entities, the Identity of Interest test ensures that they are

still affiliated with those owned and operated by Tipton.

## B.  Application of the Affiliation Rules to Foreign Entities

43.  Under the Interim Final Rule published and effective May 21, 2020, "Paycheck Protection Program—Treatment of Entities With Foreign Affiliates," the SBA clarified that:

> SBA's affiliation rules provide that in determining an entity's number of employees, employees of the entity "and all of its domestic and foreign affiliates" are included. As a result, in most cases, a borrower is considered together with its U.S. and foreign affiliates for purposes of determining eligibility for the PPP…. To provide further clarification of this methodology, SBA issued guidance on May 5, 2020 (FAQ 44)[1] stating that an applicant must count all of its employees and the employees of its U.S. and foreign affiliates, absent a waiver of or an exception to the affiliation rules.

 85 Fed. Reg. 30835, 30836.

44.   The Interim Final Rule, Section I, concluded, unequivocally, that "If an applicant, together with its domestic and foreign affiliates, does not meet the 500-employee or other applicable PPP size standard, it is not eligible for a PPP loan." *Id.*

45.  The Interim Final Rule repeated this requirement again in Section II:

> Therefore, to calculate the number of employees of an entity for purposes of determining eligibility for the PPP, an entity must include all employees of its domestic and foreign affiliates, except in those limited circumstances where the affiliation rules expressly do not apply to the entity. Any entity that, together with its domestic and foreign affiliates, does not meet the 500-

---

[1] https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Frequently-Asked-Questions.pdf

>  employee or other applicable PPP size standard is therefore ineligible for a PPP loan.

*Id.* at 30836-37 (footnote omitted).

46. The Second Draw PPP program adopted, in relevant part, these same affiliation rules, except that the employee count was reduced from 500 to 300, as was consistent with the change in the general eligibility requirements. 86 Fed. Reg. 3712, 3714-15 (January 12, 2021), codified in 13 C.F.R. § 121.

47. Helena Labs and Labcon applied for their First Draw loans during the safe harbor, and so they need not have included foreign employees, revenues, and profits in their eligibility considerations. However, Labcon applied for its Second Draw loan after the clarification was issued, and so employees of foreign affiliates should have been considered.

### C. Affiliation Rule Waiver Requirements

48. To avoid application of the affiliate rules, Helena Labs and/or Labcon would have to meet one of three affiliation rule waiver requirements.

49. The affiliation rules are waived under the PPP program for any of the following three reasons: (1) any business concern with less than 500 employees that, as of the date on which the loan is funded, is assigned a North American Industry Classification System (NAICS) code beginning with the digits 72; (2) any business concern operating as a franchise that is assigned a franchise identifier code by the U.S. SBA; and (3) any business

concern that "receives financial assistance from a company licensed under section 301 of the Small Business Investment Act of 1958," *i.e.*, a "small business investment company." "Financial assistance" includes any type of financing listed in 13 C.F.R. § 107.50, including loans and equity.

50. At least two of the three waivers to the affiliation rules do not apply: neither Defendant is assigned a NAICS code beginning with 72, nor are either assigned a franchise identifier code.

51. As for the third waiver, Blockquote has not found any evidence that either Defendant received any SBIC lending.

### D. Application of the Affiliation Rules

*Second Draw*

52. Under the Second Draw regulations, companies were eligible for PPP funds if they had 300 employees or less, including domestic and foreign affiliates.

53. Labcon reported 205 employees on its Second Draw application, up from the 198 it reported on the First Draw. Affiliated entities therefore would only have to employ 96 more employees for Labcon to have been ineligible for its Second Draw loan.

54. Helena Labs and Labcon collectively reported a total of 558 jobs on their First Draw applications. It is unlikely that Helena Labs reduced its workforce from 360 employees to just 95 employees. Moreover, according to

Helena Labs UK's Financial Statements for the Year Ended June 30, 2020, Helena Labs UK and its subsidiaries employed an average of 135 employees during FY 2021.

55. Because the employment test is the only test under which an entity could qualify for the Second Draw loans, Labcon was ineligible for its $2 million loan.

*First Draw*

56. A business was eligible for a First Draw PPP Loan if the business had 500 or fewer employees, the business met the SBA employee-based or revenue-based size standard for the industry in which it operates (if applicable), or the business was eligible under the SBA's alternative size standard, which requires that the companies' maximum tangible net worth is not more than $15 million; and average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million.

57. Labcon applied for its PPP loans under NAICS code 326199, which has an expanded size standard of 750 jobs. Assuming this is the correct code, Labcon would have been eligible for the First Draw loan under this test.

58. Helena Labs and Labcon collectively reported a total of 558 jobs on their First Draw applications, and so Helena Labs exceeded the 500-employee limit when including affiliates.

59. Helena Labs applied under NAICS code 621491 as an "HMO Medical Center," which has a size standard of $35 million in revenues, even though Helena Labs is not an HMO Medical Center and so this is likely a false code.

60. Various websites such as ZoomInfo estimate that Helena Labs had annual revenues of over $200 million,[2] and so were this the correct code, Helena Labs would not have been eligible for its First Draw Loan under either the employee or revenue size standards.

61. On March 1, 2020, shortly before Helena Labs applied for its PPP First Draw loan, the Department of Veterans Affairs awarded Helena Labs a contract under NAICS code 334519 (Other Measuring and Controlling Device Manufacturing). NAICS code 334519 has a size standard of 500 employees and no revenue size standard, and so Helena Labs also would not be eligible under this code.

62. Considering its substantial revenues and ownership of multiple domestic and international subsidiaries, upon information and belief, Helena Labs also would not have qualified under the alternative size standard.

63. Accordingly, when applying the NAICS code used by Helena Labs on its First Draw application, upon information and belief, it was not eligible for its $2,871,430.

---

[2] https://www.zoominfo.com/c/helena-laboratories-pty-ltd/51777952

## FALSE CERTIFICATIONS

64. Version 1 of the Second Draw PPP Borrower Application Form, effective January 8, 2021, required the applicant to certify in good faith that, *inter alia*:

   a. The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing Second Draw Paycheck Protection Program Loans under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) and the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the Paycheck Protection Program Rules).

   b. The Applicant, together with its affiliates (if applicable)... employs no more than 300 employees…

   c. I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

65. Later versions of these applications contained similar certifications.

66. Labcon had to make these certifications to receive Second Draw PPP funding. Some or all of the above PPP certifications were false when made by Labcon because it failed to adequately consider its affiliation with its parent

company or affiliated subsidiaries, which exceeded 300 total employees.

## CONCLUSION

67. Defendants should be required to return any and all PPP funds for which they did not qualify and for which they received federal loan forgiveness, in addition to paying penalties and fines for taking advantage of a program intended to rescue small businesses.

## COUNT I
## VIOLATIONS OF 31 U.S.C. § 3729
## FALSE CLAIMS ACT

68. Relator hereby incorporates and realleges all other paragraphs as if fully set forth herein.

69. As set forth above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

70. As set forth above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

71. As set forth above, Defendants knowingly conspired to commit a violation of the False Claims Act, in violation of 31 U.S.C. § 3729(a)(1)(C).

72. Due to Defendants' conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble

damages and a civil penalty for each false claim, record, or statement. 31 U.S.C. § 3729.

73. Relator is entitled to reasonable attorneys' fees, costs, and expenses. 31 U.S.C. § 3730(d)(1).

## **PRAYER FOR RELIEF**

WHEREFORE, Relator prays for judgment against Defendants:

(a) awarding the United States treble damages sustained by it for each of the false claims;

(b) awarding the United States a maximum civil penalty for each of the false claims and statements;

(c) awarding Relator the maximum relator's share of the proceeds of this action and any alternate remedy or the settlement of any such claim;

(d) awarding Relator litigation costs and reasonable attorneys' fees and expenses; and

(e) granting such other relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Relator hereby respectfully demands trial by jury on all issues and counts triable as of right before a jury.

Respectfully submitted,

/s/ Jason Marcus
Jason Marcus
Georgia Bar No. 949698
**Bracker & Marcus LLC**
3355 Lenox Road, Suite 660
Atlanta, Georgia 30326
Telephone: (770) 988-5035
Facsimile: (678) 648-5544
Jason@fcacounsel.com